(103 So. 255)

No. 24891.

**ROBINSON et al. v. LOUISIANA GAS & FUEL CO.**

(Feb. 2, 1925.  Rehearing Denied March 2, 1925.)

*(Syllabus by Editorial Staff.)*

Mines and minerals ⬳75—Lessors to whom lessee had agreed to furnish free gas in consideration of extension held not entitled thereto after termination of lease.

Lessors, to whom lessee had agreed to furnish gas free of charge in consideration of

157 La.—29

extension of lease, were not entitled to gas, without payment therefor, after lessee had acknowledged termination of lease and lessors had agreed, on such acknowledgment, to pay for all gas thereafter used by them.

Appeal from First Judicial District Court, Parish of Caddo; J. R. Land, Judge.

Action by Mrs. Mattie H. Robinson and others against the Louisiana Gas & Fuel Company. From an adverse judgment, plaintiffs appeal. Affirmed.

Foster, Looney & Wilkinson, and Marion K. Smith, all of Shreveport, for appellants.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellee.

ROGERS, J. Plaintiffs are the owners of a tract of land in Caddo parish. North of and adjacent to this property is another tract of land owned by C. M. Hutchinson, one of the present plaintiffs, and E. V., T. C., and Martha Frierson. In this litigation the former tract is referred to as the "Hutchinson tract" and the latter is referred to as the "Frierson tract."

In May, 1916, the Atlas Oil Company obtained an oil and gas lease on each of said properties. These leases, mutatis mutandis, were identical in terms; each referring to, and being made dependent upon, the other. Subsequently, the Atlas Oil Company assigned the lease on the Hutchinson tract to the present defendant.

In a previous suit brought by plaintiffs against the Atlas Oil Company the lease covering the Frierson tract was annulled for the failure on the part of the lessee to prosecute the development work as required by the contract. See Hutchinson et al. v. Atlas Oil Co., 148 La. 540, 87 So. 265. The court, in its opinion in that case, refers to and discusses both leases, and shows that they were so closely related as to, in many respects, constitute one undertaking.

On March 12, 1917, which was approximately two months prior to the expiration of

the lease on the Hutchinson tract, Mr. O. A. Wright, the general manager of the Atlas Oil Company, addressed a letter to Mr. T. S. Hutchinson, one of the plaintiffs, with a view of obtaining an extension of said lease. This letter is reproduced at pages 549 and 550 of the opinion in Hutchinson v. Atlas Oil Co. (87 So. 269), referred to supra. The extension sought was granted until August 1, 1917, in consideration of the agreement by the Atlas Oil Company to either drill in the meantime on the Hutchinson tract in an effort to find oil or gas or to pipe gas, free of cost, from the well on the Frierson tract to the gin on plaintiffs' Caspiana plantation.

The Atlas Oil Company failed to drill on the Hutchinson tract prior to August 1, 1917. It did, however, lay the pipe line and make the connections in compliance with its agreement at a cost of $3,318.14. Thereafter, up to February, 1920, a period of something over two years, the Atlas Oil Company and its assignee, the Louisiana Gas & Fuel Company, furnished free gas to plaintiffs. Since February, 1920, however, the Louisiana Gas & Fuel Company has exacted and received payment for the gas so used by plaintiffs. A dispute having arisen between the parties, the plaintiffs, in the latter part of the year 1920, refused to pay any further charges, which provoked a threat from defendant that if same were not paid it would discontinue its service of gas to plaintiffs and would take up and remove its pipe line.

This suit was instituted to restrain defendant from carrying out its threat. A preliminary writ of injunction was issued, which defendant moved to dissolve on the ground that the allegations made to obtain the same were insufficient in law and unfounded in fact. After a trial of this motion, defendant filed a plea of waiver and estoppel, averring that plaintiffs had waived whatever right to free gas they might have had, if any, by paying for the gas used without protest and by their repeated promises to pay for such gas, as set forth in their letters filed in evidence in the case.

The court below dissolved the preliminary writ of injunction and rejected plaintiffs' demands, reserving defendant's right to sue for damages. From this judgment plaintiffs have appealed.

We think the judgment appealed from is correct. The lease on the Frierson tract was annulled by the district court in June, 1918. Subsequently the parties, in a series of interviews and by means of letters, discussed their respective rights in the Hutchinson lease, and in the agreement on the part of defendant to furnish free gas to the plaintiffs. The controversy finally resulted in the acknowledgment, apparently, by the defendant that its lease on the Hutchinson tract had terminated, and in the acquiescence on the part of the plaintiffs in the position taken by defendant that its obligation to furnish them with free gas had ceased, and, beginning with February, 1920, they agreed to pay for all gas thereafter used by them. Under date of March 17, 1920, plaintiffs addressed a letter to defendant, complaining of the incorrectness of the charge for gas during the month of February. In this letter the following language is used:

"We are perfectly willing to pay for the gas consumed in proportion to the other consumers that you have on the line. * * * If the meters are placed at the consumers' connection at Caspiana, we will be perfectly willing to pay for the gas used just as your other customers on the same line are doing. * * * Again, we wish to advise you that we are perfectly willing to pay for the actual gas used if you will render us a correct bill."

This letter was replied to by defendant under date of April 1, 1920, suggesting the manner in which a correct adjustment of the charges could be had, and offering to change its line at Caspiana so that all of plaintiffs' connections would be freed from the main line and placed on a branch line with a meter

at its head, provided plaintiffs would agree to pay the cost of such installation. To this, under date of April 9, 1920, plaintiffs answered as follows:

"Louisiana Gas & Fuel Co., Shreveport, La.— Gentlemen: We are in receipt of your kind favor of the 1st inst. in regard to gas used at Caspiana and Velie, La. The suggestion that you make in regards to adjusting bill for gas used seems to be perfectly satisfactory, and we are willing to settle on this basis until the meters can be set at Caspiana and Velie at some time convenient to you.

"The stores at Caspiana and Velie have been burning gas all night for lighting purposes, and it will be satisfactory to double the bill for these stores, as you suggested.

"You can go ahead and figure out this average and render your bills accordingly. We would only ask that you make two separate bills, one to the Est. of W. J. Hutchinson, for the 9 consumers at Caspiana, and the other bill to C. M. Hutchinson at Velie, La., for the 3 consumers at Velie, as these two businesses are entirely separate and distinct."

As directed in this letter the bills were thereafter separated, and were paid up to November, 1920, at which date C. M. Hutchinson owed a balance of $139.44 and the estate of J. W. Hutchinson owed a balance of $313.53.

The following letter also appears in the record:
"Caspiana, La., Nov. 15, 1920.
"The La. Gas Co., Shreveport, La.—Dear Sirs: Replying to attached letter, we would ask that you send 3 meters down at your earliest convenience.

"We want to do some ginning the latter part of this week, so thank you for prompt attention.
"Resp.,        W. J. Hutchinson, Jr."

What followed the writing and receipt of this letter is not quite clear. It would appear, however, from the testimony of C. M. Hutchinson that a controversy arose concerning the size and the placing of one of these meters, coupled with a complaint that the bill for gas furnished was too large. In the course of this dispute defendant again threat-ened to cut off plaintiffs' supply of gas. The present suit was filed December 9, 1920.

Plaintiffs contend that their payment for the gas was made under protest. It is true that the three Hutchinsons called as witnesses testified they paid under protest. Two of the said witnesses, however, testified, merely, that a protest had been made. C. M. Hutchinson, the other witness, stated that he had made a verbal protest to McGowen, the general manager of the defendant company. McGowen, however, and Nowery, the gas superintendent of defendant, both deny that any protest was made. No written protest was made by plaintiffs, and their letters evidence a willingness on their part to pay for the gas used by them.

Judgment affirmed.